Judge Simpson
delivered the opinion of the Court.
Adams exhibited a bill in chancery, in which he alleged that James McKee was largely indebted to him, on account of a partnership transaction in the purchase and sale of hogs, in which they, together with a certain Fleming George, had been previously concerned; that there still existed' outstanding debts due by them to a very considerable amount, the payment of which he was apprehensive would devolve exclusively on him and the said Fleming George, and that McKee refused to secure him from ultimate loss. He also alleged that he knew of no available means belonging to McKee, out of wnich he could pay him the money he owed him, or indemnify him for that which he would be compelled in a short time to pay on account of the firm, except three slaves and some household furniture; and that he believed McKee intended fraudulently to sell and convey or otherwise dispose of said property, for the purpose of cheating, hindering, and delaying the complainant, and his other creditors, in the collection of their debts, tie prayed for and obtained an attachment and had it levied upon the slaves and the household furniture of the defendant, James McKee.
After the attachment had been issued, and McKee had information that it had been done, but before it was levied, he executed a mortgage on the same property to Green, to indemnify him as his surety in a guardian’s bond, and also to Kennard, one of his creditors, to secure the payment of a debt which he owed him. Neither Green nor Kennard was present when the mortgage was executed.
Heirs of Polly McKee made parties and their cross bill.
The- decree of the Circuit Court.
The mortgagees were subsequently made parties, and denied that the mortgagor intended to make, or had made, a fraudulent disposition of his property, and claimed a right to. hold it under the mortgage, and have it applied to the payment of the liabilities therein mentioned. . . '
James McKee was the guardian of one of the heirs of Polly McKee, who were made parties for the purpose of adjusting. the-extent of the liability of Green as surety in the'guardian’s bond. The heirs of Polly McKee after they were made parties,-filed a cross bill against James McKee and his sureties, and against Hugh W. McKee who had also been appointed their guardian, and his sureties in the bonds executed by him as such, and claimed that the latter owed them a large sum of money, being the proceeds of land belonging to them, which had been sold under a. decree of the Court obtained at his instance as their guardian.
The Court below rendered a decree sustaining Adams’ attachment on the ground that the execution' -of the mortgage under the circumstances proved the' alleged fraud, but whether it-did or not a Court of chancery had jurisdiction to adjust the partnership accounts, and that the commencement of the suifin chancery and the levy of the attachment upon the property, created a lien in favor of Adams, and gave him a right to have it appropriated to the payment of the demand set up in his bill, independent of any intention upon the part of the defendant McKee to make a fraudulent disposition- of -his property. The right thus acquired by him was decreed to be superior to that claimed by the’ mortgagees.
The cross bill filed by the heirs of Polly McKee was dismissed as to a considerable part of the claim asserted by them, and they together with the mortgagees, Green and Kennard, have prosecuted a writ of error to reverse the decree.
As Adams’ demand against McKee arose out of a partnership transaction between them, a Court of equi *104 ty had jurisdiction to settle the partnership dealings, and decree the payment of the balance due. It does not follow however, because the Court had jurisdiction for this purpose, that it could issue an attachment against the estate of McKee and render a decree in rem for the payment of the balance due to Adams. In this case the jurisdiction ire rem was not incident to that which the Court acquired from the equitable nature of the demand asserted, but had to be sustained upon the assumed fraudulent intention of McKee and the power of the Chancellor, to arrest the execution of that intention by securing and applying the property to the payment of the complainant’s demand.
Though the Chancellor has jurisdiction to adjust and settle partnerships, it does not follow that when a part lier sues for that purpose the OourL may, in the exercise of that jurisdiction, award an attachment against, & thereby secure a lien upon the individual property of the other partners. The ground for attachment must be alleged and proved independently of the jurisdiction to settle the partnership.
A debtor may mortgage his pro perty even after suit lor its attachment, subject however to the attachment lien, if any is created.
The cases to which we have been referred in support of the jurisdiction in rem do not apply. In all the cases, the complainant had a lien upon the property, or the jurisdiction of the Court was based upon a state of fact, which authorized the Chancellor to render a direct decree for the sale of the defendant’s property. Although the Court might in settling a partnership concern, decree a sale of partnership effects for the purpose of paying a balance due to either one of the partners on account of the lien which the partners have on such effects, yet no decree can be rendered by the Court in favor of one partner for the sale of the individual estate of the other, unless upon such a state of case as would authorize a similar decree in cases where the Court had jurisdiction alone in rem and not in personam.
The execution of this deed of mortgage however is relied upon as proving a previous fraudulent intention upon the part of McKee.
We cannot perceive the process of reasoning which authorizes such a deduction. Before the suit was commenced the execution of the deed would have been' legal and valid. An act lawful in itself certainly does not create a presumption of fraud. If such an effect would not have been produced, nor such an inference justified by the execution of the deed before suit, neith *105 crean it beNjy its execution afterwards. The levy of an attachment upon property does not preclude the owner from mortgaging it to other creditors; the mortgagees however in that case, would hold it subject to the final disposition of the suit. If the attachment were sustained, the complainant’s lien would be superior to the mortgage, and his demand would haye to be first satisfied. But if he failed to sustain his lien .upon the property, the mortgagees would hold if as if no such suit had been pending when the deed was executed. ■
No proof that McKee acted fraudulently in making the mort gage to Green & Kennard.
The assent of mortgagees to a mortgage made for their benefit Will be presumed
McKee denies the fraudulent intent charged by Adams in his bill. The only proof relied upon to sustain it is the execution of the deed of mortgage already referred to, and a statement made by the mortgagor at the time of its execution, that Adams had treated him badly. The bad treatment complained of, was no dou'bt the issuing of the attachment, and that may have been the reason why he did not include Adams in the mortgage. 'But that declaration does not conduce to prove a fraudulent intent upon the part of McKee before the suit was commenced, nor even that had he then executed a mortgage on his. property, he would have given other creditors the preference over Adams.
There is an entire failure to produce any testimony tending to show an intention upon the part of McKee to dispose of his property with a view to evade the payment of his debts. The strongest presumption warranted by the evidence is, that he had it in contemplation before Adams filed his bill and sued out his attachment, to mortgage his property .to 'his creditors to the exclusion of Adams. But as the law permitted him to prefer one creditor to another, even this design hi it were actually entertained by him, wás' neither fraudulent nor illegal, although it may have operated to the prejudice of Adams, if the property of McKee was inadequate to the payment of all his debts.' The presence .of the mortgagees when the mortgage was executed is not essential to its validity, their assent to it *106 and acceptance of its provisions will be presumed, as it was executed for their benefit.
Case slated be tween H. W. Me Kee and Polly McKee’s heirs.
Adams having failed to sustain his attachment, the' result is that the mortgagees are entitled to the property mortgaged, and have a right to have it applied according to the provisions of the deed, whether it was executed before or after the levy of the attachment.
Other questions are made in the case which we will now proceed to notice :
Hugh W. McKee as guardian of the two infant children of Polly McKee, had a part of the real estate of his wards sold upon a petition filed by him for that purpose. The purchaser at the sale transferred the benefit of his purchase to Hugh W. McKee the guardian, and the Court confirmed the sale and transfer; the guardian having executed bond with security conditioned for the payment of the purchase money to his wards when they attained the age of twenty-one.
Hugh W. McKee sold and conveyed the same land to Proctor; and his wards having had another guardian appointed, brought suit against Proctor for the land contending that the sale was invalid. They recovered a judgment in an action of ejectment, and Proctor having died, proceedings in chancery were instituted by his heirs relying upon their equity and praying that the children of Polly McKee might be compelled to convey to them the legal title. The suit in chancery to which Hugh W. McKee was a party, also insisting on the validity of the sale, and praying for its confirmation by the Chancellor terminated in favor of Proctor’s heirs, and a decree was rendered confirming the sale, and directing a conveyance of the legal title to be made by the defendants, the two former wards of H. W. McKee.
Proctor in his lifetime had sold the land to the Vaughns, who during the continuance of the controversy between Proctor and the heirs of Polly McKee, filed a bill in chancery to have the contract of purchase *107 rescinded, upon the ground that Proctor at the time of the sale was not invested with a valid title to the land sold.
The land had been sold by Proctor at a high price, and his heirs after his death, being very solicitous that the contract should not be rescinded, paid to the heirs of Polly McKee who had in the mean time arrived at full age, the sum of five thousand dollars, and thereby procured from them a conveyance of the legal title to one of Proctor’s heirs, during the pendency of the suit for the confirmation of the sale made upon the' guardian’s petition.
The infants land when sold under the decree obtained upon the petition of their guardian, brought a little upwards of $2500. The same land was sold by Proctor to the Vaughns at the price of $27 50 per acre, which would have made the value of the whole tract amount to $8635.
Plugh W. McKee was no party to the arrangement between his former wards and Proctor’s heirs; nor was the sale and conveyance by McKee to Proctor, rescinded, or in any manner affected by it, except so far as it operated to confirm the validity of the title conveyed.
The children of Polly McKee claim in this suit the money in the hands of their guardian arising from the sale of this land, and the only question in relation'thereto presented at this time, is, whether under the circumstances here detailed, they are in equity precluded from asserting this demand.
If the sale made upon the petition of their guardian had been set aside and annulled at their instance, as a matter of course, they would have had no right to the purchase money. In that event McKee could have been compelled to refund the price of the land received by him from Proctor, and the parties would have been all placed back in their original condition. But the sale was not vacated either in substance orín form. It was finally confirmed by the Court upon the equity of the case, without reference to the contract between Proc *108 tor's h'é’írs and tbe heirs of Polly McKee. The effect of that decision is, that the sale of the infants’ land to Hugh W. McKee, and the sale of the same land by McKee to Proctor remain undisturbed. Proctor’s heirs have no claim upon McKee to refund the purchase money received by him, nor has McKee any right in justice or in equity to retain the money arising from the sale of the land,- and remaining in his hands as guardian.
Admitting that Proctor’s heirs had paid to the heirs of Polly McKee, this sum of five thousand dollars to induce them to ratify the sale made upon the petition of their guardian, and that a ratification had thereupon been made, without any action of the Court upon the subject, no principle is perceived by which the liability of the guardian to his wards for the money in his hands, would be discharged by such a contract. If in a court of equity it would be entitled to any consideration, it would seem to increase his obligation to pay the purchase money to his wards, inasmuch as its effect would be to preclude the possibility of any future difficulty in regard to the validity of the sale.
If on the other hand the contract was made not for the purpose of confirming the sale, but as a chancing bargain, the rights of all concerned still to depend upon the final result of the suit in chancery to which they were all parties, except that the Proctors were in any event to retain the title to the land, then it became obviously the interest of Proctor’s- heirs to fail in the suit, whereby they would- have had a right to the purchase money paid by their ancestor to McKee. It was the ■interest of McKee that they should succeed in the suit, ^.because he had received from Proctor a larger sum than he was liable for as guardian. The heirs of Polly McKee were also interested in the success of Proctor’s heirs. They had it is true received five thousand dollars which they had a right to retain in any event, but if Proctor’s heirs obtained a decree and the sale was confirmed, the money in the hands of their guardian *109 would also belong to them. If the contract were of this character, the liability of the guardian for the money belonging to his wards is not affected by it. He has no right to complain that his wards have .made a chancing bargain which has resulted in their favor. He has received no prejudice from it. Proctor’s heirs are the injured party, but the act on their part- was voluntary, done for ihe purpose of avoiding what they supposed to be a much greater injury, that would result from a recision of the contract of sale to the Vaughns,
If the heirs of Polly McKee had recovered the land, and the sale had been vacated, the value of the land would have exceeded the amount paid by Proctor’s heirs together with their part of that in the hands'of the guardian. But as the result of the litigation was considered uncertain, they made a contract which secured to them upon any contingency a certain amount, and by which they might if the sale was confirmed, have a right to the- fund in the hands of. their former guardian.
By the terms of the contract between McKee’s heirs and the heirs of Proctor, the money in the hands of Hugh W. McKee as guardian of the former was to be divided equally between the parties. The legitimate inference from this part of their agreement is, that the heirs of Polly McKee if they had intended to surrender their claim upon their guardian for .the fund in his hands, would have required the payment of a still larger sum than the one which was paid to them by Proctor’s heirs. And this provision in their agreement also proves most conclusively, that the understanding of both the contracting parties was that the claim against Hugh W. McKee was not to be impaired by the arrangement, but his liability was still to depend upon the result of the pending litigation relative to the validity of the sale of the land upon the petition of the guardian.
The contract of the parties was substantially a compromise of a pending controversy about the validity of *110 fjie sale of infants land; that they, having attained the age of twenty-one agreed to and did confirm, in consideration of the payment to them of an additional sum of money which certain circumstances made it the interest of the sub-vendee to pay.' Such a contract they had a right to make, it did not operate to the prejudice ,of their guardian, nor can he justly complain of it. Can he then claim the benefit of it, or set it up and rely upon it for the purpose of defeating their demand' against him for the money in his hands, arising from the sale of the land under the decree of the Court ?
Infant heirs by proeurecTa 'de'i oree for sale of their real estate, ■and the guardian to the benefit of 'The iieirahsue hi •ejectment & obtain a judgment for the lands; a sub-pure h as e r from the guardian filed his bill enjoining the judgment, and praying a conveyance upon grounds of equity set out. The compl a i n a n t s pay the heirs a price to confirm the original sale and convey the title: Held that such an agreement did not absolve the guardian or his sureties from their liability to the infants for the am’t for which the first sale was made; the guardian had become liable therefor by taking the place of the purchaser under the first sale.
Upon what principle can the benefit of the compromise made by Proctor’s heirs with Polly McKee’s heirs claimed by H. W. McKee for that purpose. It was mac[e without his consent or approbation. He was un- . . , 1 * , , . , der no obligations to refund to Proctor’s heirs the money expended by them in making the compromise and procuring a ratification of the sale., Had the money been demanded by Proctor’s heirs, he could have replied, You expended your money for nothing, the title I conveyed to your ancestor was good and valid, it has ■ been so decreed by a Court of competent jurisdiction, and therefore I am not responsible to you for your unnecessary and unauthorized expenditure. Suppose however, that the parties instead of allowing the suit in chancery to progress to final hearing, had dismissed it agreed, with a perpetual injunction against the judgment in ejectment obtained by the heirs of Polly McKee, and Proctor’s heirs had then made a similar demand for the money — Might not Plugh W. McKee have made substantially the same response? Proctor’s heirs in the suit in chancery between the parties had. alleged that the sale was legal, and set forth such facts and circumstances as they relied upon to manifest its legality, and their right in equity to a confirmation of it by the heirs of Polly McKee. Could they after having taken that attitude, successfully assert a claim against Hugh W. McKee as their vendor for the money paid by them to Polly McKees heirs ? Such a claim *111 could only have been based upon the assumption that the sale of the infants land was void, an assumption in direct opposition to the ground taken by them in the suit in chancery; and unauthorized by any decree or operative judgment demonstrating the invalidity of the title. The judgment in ejectment which had been recovered by the heirs of Polly McKee, being perpetually enjoined by the consent.of the parties, would have been inoperative, and therefore insufficient to establish in favor of Proctor’s heirs the existence of any defect in the title of their ancestor’s vendor, and consequently not sufficient to impose upon him any obligation to refund to them the money they had expended in effecting the compromise.
A decree will not be presumed to have been obtained by fraud and collusion without either al legationor proof.
There is no allegation in this case either by Hugh W. McKee or his sureties, that the sale of the infants land under the decreee of the Court was void, and that the decree in favor of Proctor’s heirs confirming the sale, was rendered by fraud and collusion between them, and the heirs of Polly McKee. Indeed such an allegation would be not only inconsistent with the attitude assumed by McKee, (and also by one of his sureties who was a party,) in the suit in chancery in which the decree was rendered, but also contradicted by all the presumptions arising out of the relative interests of the respecj tive parties. It was obviously the interest of Proctor’s heirs to have failed in the suit. A decree, against them would have established the invalidity of the title conveyed to their ancestor, and invested them with a right against his vendor to demand from him either the money they had expended to perfect the title, or the consideration tha t had been paid to him on the purchase of the land. It was to the advantage of Hugh W. McKee that a decree should be rendered in favor of Proctor’s heirs. Such a decree relieved him from all liability on the covenant of warranty in his deed to Proctor, by confirming the title he had conveyed; and although he remained still responsible to the heirs of Polly McKee for the money in his hands as their guar *112 dian, yet his liability on that account was considerably less than it would have been on his warranty had the title proved defective, especially if as he alleges, he had appropriated nearly all of the money in his hands to the support and education of his wards, and owed them little or nothing.. The supposition therefore that the decree was obtained by collusion between Proctor’s heirs and Polly McKee’s heirs to the prejudice of Hugh W. McKee is not authorized by the nature and effect of the decree in its operations upon the interests of the parties, or by any testimony in the cause, even if the pleadings upon the part of Hugh W. McKee or his sureties' had contained any allegations .upon that subject.
We have been unable to perceive any valid reason for precluding the heirs of Polly McKee from asserting a claim to this fund in the hands of Hugh W. McKee, or any equitable consideration that feléases him or his sureties from the payment of the balance due whatever it may be. Consequently the Court erred in dismissing their cross bill so far as it asserted this demand.
The bond executed by James McKee as guardian, and Green as his surety, does not contain any stipulation for the indemnity of the surety in the previous bond, but contains the usual conditions, and therefore Green must be regarded as additional and not counter security. But the money arising under the mortgage to the extent of Green’s interest therein, should first be applied, to the discharge of the liability of the sureties in the two bonds, and the balance of the liability, if any, must rest equally upon them.
The executors of Jennings who was a surety in the bonds executed by Hugh W. McKee, as guardian in the County and Circuit Courts, having denied they had any assets in their hands, and set up and relied upon a settlement and distribution of the estate of Jennings more than five years before the commencement of the •present suit,-and that fact appearing by the record before us .to have been admitted by the heirs of Polly *113 McKee, are not liable to any decree on account of any responsibility by their testator Jennings as a surety in said bonds. But it is suggested that the transcript containing this admission is not correctly copied from the original, if such be the fact, the decision ' on -this point will be regarded by the Court below as inapplicable, and Jennings’ heirs are necessary parties to the cross bill of Polly McKee’s heirs, and should be made defendants by the complainants in the cross bill.
Turner for plaintiffs; Burdett and Harlan for defendants.
The decree of the Court below is reversed and cause remanded for a reference to a commissioner to audit and state the accounts of Hugh W. McKee as guardian, unless it has been already done under the decree rendered in this case, which we perceive appointed a commissioner for that purpose, and for further proceedings consistent with the principles of this opinion.