## DANA *v.* STANFORDS AND DEITZ.

The object of the thirty-ninth section of the "Act for the relief of Insolvent Debtors and protection of Creditors," which provides that no assignment of any insolvent debtor, otherwise than as provided in that act, shall be legal or binding upon creditors, was to do away with all voluntary assignments by a debtor in failing circumstances, for the benefit of his creditors.

It was never intended to prevent an insolvent debtor from transferring his property directly to his creditor, either absolutely in payment of his debts, or as security by way of mortgage.

An assignment, in the sense of the statute, must embrace a trust for others than the assignee. Without the creation of such trust, the conveyance directly to the creditor, with authority to him to sell the property transferred, and to apply the proceeds in discharge of the indebtedness to himself and the liabilities he has incurred, is only a mortgage, whatever its form, and is not within the letter or spirit of the statute.

In such cases, the assignee acquires only a specific lien upon the property. The trust which results in favor of the assignor, arises from the nature of the transaction, as one of security. Such trust results in all cases of mortgages, but is not the object of their execution.

From the power which a man possesses over his own property, it follows that he can dispose of it in any manner he may see fit, which does not contravene the general policy of the law. That policy restricts the power of disposition, so as to prevent the withdrawal of the property from the claims of his creditors. It is no part of such policy to inhibit its application to the payment of one debt rather than another.

A conveyance giving a preference, is not fraudulent, though the debtor be insolvent, and the creditor be aware at the time that it will have the effect of defeating the collection of other debts. To avoid the conveyance, there must be a real design on the part of the debtor to prevent the application of his property, in whole or in part, to the satisfaction of his debts. A creditor violates no rule of law when he takes payment or security for his demand, though others are thereby deprived of all means of satisfaction of their own equally meritorious claims.

Where a debtor, who was at the time insolvent, executed a mortgage of all his property and effects to certain specified creditors, to secure his indebtedness to them, and to protect them from liabilities incurred by their endorsement of his paper: *Held*, that the mortgage was not an assignment either within the letter or spirit of the thirty-ninth section of the "Act for the relief of Insolvent Debtors and protection of Creditors," and did not create a trust for the use of the mortgagor, prohibited by the Statute of Frauds.

APPEAL from the District Court of the Twelfth Judicial District County of San Francisco.

This was a suit brought to reach the assets of the defendant, Samuel Deitz, alleged to be in the hands of the defendants, Josiah Stanford, A. P. Stanford, and Charles Stanford, who composed the firm of Stanford Brothers. The proofs showed, and the Court found, the following facts, viz. : That on the sixth day of June, 1857, the plaintiff recovered a judgment in the District Court against the defendant Deitz, for $3602 50, which judgment remains in force and unpaid; and that on the same day an execution was issued on said judgment, directed to the sheriff of San Francisco county, which execution, on the eleventh day of June, 1857, was returned by said sheriff *nulla bona;* that whilst said execution was in the hands of the sheriff, he summoned the defendants Stanford Brothers, as garnishees, by

virtue thereof, and attached in their hands all property, debts, and credits, belonging to said Deitz; that on the seventeenth day of April, 1857, the defendant Deitz was justly indebted to the defendants Stanford Brothers, in the sum of $18,996 71, for money before then loaned, and goods, wares, and merchandise sold and delivered, by said Stanford Brothers to said Deitz; and that the said Stanford Brothers were also then bound as accommodation endorsers for said Deitz on sundry promissory notes of the said Deitz, then outstanding in the hands of sundry holders thereof, and which amounted in the aggregate to $27,238 23; that on the said seventeenth day of April, the said Stanford Brothers demanded of said Deitz security for his said indebtedness to them, and an indemnity against loss on account of their said endorsements, and threatened to sue out an attachment against said Deitz unless such security was given, whereupon said Deitz requested them to defer such proceedings until after the arrival of the Sacramento boat that night, hoping to receive remittances, by said boat, which would enable him to continue his business; that said Stanford Brothers accordingly waited until after the arrival of said boat, and the said Deitz having received no remittances, agreed to execute to them a mortgage upon all his stock in trade, of every kind, both in San Francisco and at Sacramento, to secure the said indebtedness, and to indemnify them against loss on account of their said endorsements, which mortgage was to include all debts of every kind due and owing to said Deitz; that on the following morning, to wit, on the eighteenth day of April, 1857, about seven or eight o'clock, A. M., the said mortgage was made, executed, and delivered, for the security of the debts and liabilities aforesaid; and that said mortgage was made bona fide and with an honest intent to secure the said debts and liabilities aforesaid, and was without any fraud or covin; and that immediately upon the execution and delivery of said mortgage, the possession of all the property, effects, and choses in action, specified and embraced in said mortgage, were delivered by said Deitz to said Stanford Brothers, who have ever since continued in the actual possession thereof; that at the time of the execution and delivery of said mortgage, the said Deitz was insolvent, and had no property, estate, or effects of any kind, except such as were embraced in the said mortgage; and that said mortgage was duly filed for record in the recorder's office for the city and county of San Francisco, on the said eighteenth day of April, at a quarter of ten o'clock, A. M.; that said mortgage contains a provision to the effect that said Stanford Brothers were thereby authorized to collect, demand, sue for, recover, and receive, all the debts, dues, and demands of whatsoever nature, due and owing to said Deitz, and to apply the proceeds thereof towards the satisfaction of said mortgage, debts, and demands; and were also thereby authorized

to sell and convert into cash the property and effects embraced in said mortgage, for the best prices to be obtained therefor, with reasonable diligence; the proceeds whereof should be applied, as far as necessary for that purpose, towards the satisfaction and extinguishment of the debts, demands, and liabilities of the said Deitz to the said Stanford Brothers, as specified in said mortgage, including the notes on which they were endorsers as aforesaid; that the said Stanford Brothers, since the execution and delivery of said mortgage, have paid, satisfied, and taken up all the promissory notes of the said Deitz, on which they were accomodation endorsers as aforesaid, except one of said notes, which is yet outstanding, and on which there remains unpaid a balance of about $1200; that immediately after taking possession of said mortgaged property, Stanford Brothers proceeded to make sales thereof at private sale for the current market prices, keeping an accurate account of the proceeds of such sales, and crediting the same on said mortgage, debts, and liabilities; and that after deducting all such proceeds of sale, and all collections made from the choses in action embraced in said mortgage, there remains due and unpaid from said Dietz to said Stanford Brothers, a sum exceeding $5000, of the said mortgage debt; that there were annexed to and forming a part of said mortgage, schedules exhibiting accurately and truly the property, effects, and choses in action embraced in said mortgage, and the notes on which said Stanford Brothers were accommodation endorsers as aforesaid, with the respective amounts and times of maturity of the said several notes, and that the amount due and owing from said Deitz to said Stanford Brothers, was truly and correctly stated and set forth in said mortgage.

Upon the above facts, the Court found, as a conclusion of law, that the said mortgage was fair and *bona fide*, and without fraud or covin in law or in fact, and that the same was valid in law, and operative to secure Stanford Brothers for the debts and liabilities specified, and ordered judgment for the defendants, which was duly entered. From the judgment, the plaintiff appealed.

*S. M. Bowman* for Appellant.

1. The assignment and transfer by Deitz of all his property to Stanford Brothers, he being insolvent at the time, was fraudulent and void as against his creditors.

Early in the history of California, her Legislature passed an Insolvent Law, which, though imperfect in many of its provisions, is sufficient to enable honest debtors who are in failing circumstances, to make a just and equal distribution of their property among all their creditors. It is founded on the idea that the property of an insolvent debtor belongs of right to all his creditors. One of its main objects was the protection of credi-

tors—all creditors alike, and not a few preferred creditors at the expense of the rest. The statute enters upon and occupies the whole ground of insolvency, and it displaces and annihilates all other modes for the disposition of insolvent estates.

This Court has already declared, in terms not to be misunderstood, that the Legislature, in passing the Insolvent Act, "has stricken down every species of assignment except those made in conformity with that statute." Cheever v. Hays, 3 Cal. R., 471. And the same Court afterwards, referring to this decision, said : " The act now under consideration, (the Insolvent Act,) has already received a judicial construction at the hands of this Court, in which it was determined that it was the intention of the Legislature to do away with all voluntary assignments. Acting upon what we believe to be the better opinion of jurists, and unrestrained by any former decisions of this Court, we cheerfully avail ourselves of the opportunity afforded us by the statute, of removing the blot from our jurisprudence, and strangling forever this ready accessory of fraud and dishonesty. Since that decision, the right, as it existed at common law, of a debtor in failing circumstances to assign his property for the benefit of all or a few of his chosen creditors, has never been asserted, within our knowledge, in the Courts of this State." Woods v. Barrett & Sherwood, 5 Cal., 196.

It can make the matter no better for Stanford Brothers, that the instrument under which they claim is a mortgage. The form of the instrument is nothing. The effect of the transaction was to prefer them over the other creditors. It was an act done after insolvency, and after the estate of the debtor had been subjected to the provisions of the Insolvent Law. The very act of the parties by which the debtor placed all his property out of his hands and into the hands of his chosen creditors, was an act of insolvency in the fullest sense of the term.

The principle of common-law assignments, allowing an insolvent to prefer creditors, is all wrong. It violates the plainest principles of equal justice. The property of a debtor of right should belong to all his creditors, and he should not be allowed to pay or secure any to the exclusion of the rest, after becoming insolvent. Even in the States where the common-law rule obtains, it has often been regarded with disfavor. Judge Bronson's opinion, in Barney v. Griffin, 2 Com., 371; Boardman v. Holliday, 10 Paige C. R., 229.

But in this State, in the very outset of her career, advance ground was taken. The Legislature swept away the whole scheme by the Insolvent Act, and the Supreme Court has, in every instance wherein the question came before it, upheld the act and denounced the scheme. Various and most ingenious expedients have been devised to enable an insolvent debtor to prefer creditors. General assignments were first made, as in

the case of Cheever *v.* Hays.    Special assignments were next tried, as in the case of Groschen *v.* Paige, 6 Cal. Rep., 138. And suits between partners have been brought, and receivers have been thrust in as custodians of insolvent estates, to avoid going into insolvency, and an equal distribution among creditors; but all in vain.    And in the case at bar we see the same thing attempted by the simple device of a mortgage.    But it can make no possible difference whether the assignment was by absolute bill of sale, by deed to trustees, or by mortgage.

2. The assignment was void in law, as to creditors, for the reason that it is a mortgage of the insolvent's whole estate, making no stipulation for the other creditors.

This proposition is put upon ground aside from, and independent of, the Insolvent Act.    It rests upon the Statute of Frauds.

Deitz was insolvent, and the mortgage embraced his entire estate.    The mortgage, on its face, contains a provision in favor of Deitz, and none for his creditors.    It contemplates that there was more property than would be required to secure Stanford Brothers, and that after their claims were satisfied, the property should revert to Deitz.    Here, then, was a substantial estate reserved to Deitz, held in trust by Stanford Brothers for him, safely stowed away under the provisions of a mortgage-deed, the amount and value of the estate unknown, no provision made for his other creditors sharing in that surplus, and no means by which his creditors could reach it and sell it until after Stanford Brothers chose to surrender it.    What is this but conveying his goods in trust for himself?    What is it but a conveyance to hinder and delay creditors?    By this means, Deitz puts his estate and business out to nurse; he avoids his creditors for a while, and after due time, and when he and his trustees can agree to do so, he comes again into the possession of his estate.    So far, then, as this surplus is concerned, the mortgage was void.

3. The mortgage being void in part, is void *in toto.*    Goodrich *v.* Downs, 6 Hill, 438 ; Boardman *v.* Holliday, 10 Paige, 223 ; Hyslop *v.* Clark, 14 John., 465 ; Mackie *v.* Cairns, 5 Cowen, 548; Barney *v.* Griffin, 2 Comst., 365 ; Dana *v.* Lull, 17 Vt., 390.

*Baldwin, Crittenden and Crockett,* for Respondents.

1. The conveyance to Stanford Brothers is not an " assignment," in any proper or legal sense of the term.    There can be no assignment which does not embrace a trust for some person other than the grantee.    A conveyance from a debtor directly to his creditor, for the sole purpose of securing an honest pre-existing debt, is not an assignment, and we think has never been held to be so by any Court in the country.    On the contrary, there have been numerous decisions under statutes analogous to ours sustaining such conveyances.    Peck *v.* Merrill, 26 Vt., 686 ; Doremus *v.* O'Harra, 1 Ohio State Rep., 45 ; Davis *v.*

18

Anderson, 1 Kelly, 176 ; Eastman v. McAlpin, Ib., 157 ; Cameron v. Scudder, Ib., 204 ; Barker v. Hall, 13 N. H., 298 ; Leitch v. Holliston, 4 Coms., 211 ; Bishop v. Halsey, 13 Howard's Practice, 154 ; Riddell v. Shirley, 5 Cal., 488.

2. In the mortgage from Deitz there is no reservation of the surplus to the grantor. On the contrary, it is wholly silent as to the surplus. But if it had contained an express reservation of the surplus, it would still have been valid. Bishop v. Halsey, 13 How. Pr. R., 154 ; Leitch v. Hollister, 4 Comstock, 211 ; Parkes v. Hall, 2 Pickering, 206.

3. A conveyance made by an insolvent debtor to a creditor to pay or secure an existing and honest debt, is not fraudulent, though the parties knew at the time that the effect of it would be to defeat the collection of other debts. Covanhovan v. William, 21 Penn. R., 495 ; Morland v. Kimberland, 6 B. Mon., (Ky.,) 608 ; Brown v. Forcee, 7 Ib., 357, 361 ; Ingraham v. Gregg, 13 S. and M., 22 ; Hollister v. Loud, 2 Mich., (Gibbs,) 309 ; Kinnard v. Adams, 11 B. Monroe, 102 ; Bates v. Coe, 10 Conn. R., 280 ; Coote on Mortgages, 421.

4. Preferences, by failing debtors, of particular creditors, are not fraudulent. For a full collation of authorities in respect to preferences, see Nicholson v. Leavitt, 4 Sandf. Sup. Court, 252 ; Cason v. Murray, 15 Missouri, 378.

FIELD J., delivered the opinion of the Court—TERRY, C. J., concurring.

The question presented for consideration in this case, relates to the validity of the mortgage executed by Deitz to Stanford Brothers, to secure his indebtedness to them, and to protect them from liablities incurred by their endorsements of his paper. Deitz was at the time insolvent, and the mortgage embraced his entire property. It is insisted, by the appellant, that the instrument, though a mortgage in form, is in fact an assignment for the benefit of certain creditors, in contravention of the statute, which prohibits assignments by insolvent debtors, and is therefore void. The object of the statute was, undoubtedly, to do away with all voluntary assignments by a debtor in failing circumstances, for the benefit of his creditors. Such assignments were generally made to some friend, who often held the property for the real benefit of the assignor, whilst ostensibly holding it for the benefit of the creditors. Debtors in failing circumstances resorted to this mode of placing their property beyond the reach of attachments, whilst, in fact, they reserved its use through the instrumentality of a convenient assignee. The difficulty of making the assignees, even when responsible, account to the creditors, was so great as to be seldom attempted ; and, of course, when they were not responsible, the attempt was never made. These assignments thus became a fruitful source

of fraud, and it was against the evils thus produced that the statute of this State was leveled. It was never intended to prevent an insolvent debtor from transferring his property directly to his creditor, either absolutely, in payment of his debts, or as security, by way of mortgage. An assignment, in the sense of the statute, must embrace a trust for others than the assignee. Without the creation of such trust, the conveyance directly to the creditor, with authority to him to sell the property transferred, and to apply the proceeds in discharge of the indebtedness to himself and the liabilities he has incurred, is only a mortgage, whatever its form, and is not within the letter or spirit of the statute. The assignee acquires only a specific lien upon the property. A trust, it is true, as to the surplus, results in favor of the assignor; but that arises from the nature of the transaction, as one of security. Such trust results in all cases of mortgage, but is not the object of their execution.

The authorities which sustain the validity of transfers, like the one under consideration, are numerous and decisive. In Vermont, there is a statute which prohibits all general assignments by debtors for the benefit of creditors, and yet, in Peck v. Merrill, (26 Ver., 686,) the Supreme Court of that State held that a transfer, by a debtor, of all his property directly to his creditors, to secure an indebtedness to them and liabilities incurred by them as sureties, was not in violation of the statute: "It is evident from the authorities," says the Court, "that the transfer by a debtor of all his property does not, of itself, make what is termed a general assignment; but it must also be conveyed to trustees, to be held by them in trust for other creditors. If it is conveyed directly to creditors or sureties, for their benefit, and no trust is created for others, the transfer is then to be treated as a mortgage or pledge of personal property. In such case, there is no more impropriety in taking a lien on the whole of the debtor's property than upon a part, provided there is not an unreasonable disproportion between the value of the property and the amount of the debt."

By a statute of New Hampshire, no assignment, made by a debtor for the benefit of creditors, is valid, unless it provides for an equal distribution of his property among all his creditors, in equal proportions, according to their respective claims; and yet, in Low v. Wyman, (8 N. H., 536,) it was held that the pledge by a debtor of all his property for the payment of a particular debt was not an assignment, within the intent and meaning of the statute: "The statute," says the Court, "could never have been intended to embrace a mortgage or a pledge of any or all of a man's property for the security of a particular debt. A debtor has an undoubted right to convey all his property to one of his creditors, in satisfaction of his debt. The statute was not intended to prohibit such a preference. And, if he can convey all

his property in satisfaction of a particular debt, there seems to be no sound reason why he should not be permitted to pledge all his property to secure the payment of such debt." A similar ruling ·was made in Barker *v.* Hall, (13 N. H., 298,) where a debtor mortgaged all his property to secure the payment of a portion of his debts, leaving others unprovided for.

In Connecticut, a statute provides " that all conveyances and assignments of any lands, tenements, goods, chattels, or choses in action, hereafter made, directly or indirectly, by any person in failing circumstances, with a view to his insolvency, to any person or persons, in trust for his creditors, or any of them, shall, as against the creditors of the person making such conveyance or assignment, be deemed and adjudged fraudulent and utterly void; unless the same be made in writing, for the benefit of *all* said creditors, in proportion to their respective claims, etc.;" and in Bates *v.* Coe, (10 Conn., 280,) the question arose whether a mortgage, executed by a debtor in failing circumstances, and with a view to his insolvency, of all his estate, to parties who had become endorsers upon his paper, to secure them against their liabilities, was fraudulent and void under the above provision of law; and it was held that the instrument was neither a conveyance nor an assignment, within the meaning of the statute. " The prohibition," says the Court, " is of *conveyances and assignments.* But, surely, a mortgage is not an assignment, for that passes the whole interest in the thing assigned; whereas, a mortgage creates a lien only in favor of the mortgagee. Nor is it a conveyance, within the meaning of that term, as it has been understood by jurists in New York, Massachusetts, Maine, and Connecticut, for the last thirty years, and by English Judges for the last half century."

In Ohio, there is a statute which provides that all assignments of property in trust, which shall be made by debtors to trustees, in contemplation of insolvency, with the design to prefer one or more creditors, to the exclusion of others, shall be held to enure to the benefit of all the creditors; and, in Doremus *v.* O'Harra, (1 Ohio State Rep., 45,) the Supreme Court of that State observed : " We suppose that the plain and obvious intent of the law was only to apply to those cases where the person receiving the assignment could be considered as standing in some relation as a trustee, either in terms or by fair implication, other than that which the mere taking of security for his debt would create."

By a statute of New York, all conveyances and transfers of goods, chattels, or things in action, made in trust for the use of the person making the same, are declared to be void as against existing or subsequent creditors, (2 R. S., 136, § 1;) and in Leitch *v.* Hollister, (4 Com., 211,) an assignment, by an insolvent debtor, of a chose in action to certain of his creditors, for the purpose of

securing their demands against him, reserving the surplus to himself, was held valid. "The conveyance," says the Court, "whatever may be its form, is in effect a mortgage of the property transferred. A trust, as to the surplus, results from the nature of the security, and is not the object, or one of the objects, of the assignment. Whether expressed in the instrument, or left to implication, is immaterial. The assignee does not acquire the entire legal and equitable interest in the property conveyed, subject to the trust; but a specific lien upon it. The residuary interest of the assignor may, according to its nature, or that of the property, be reached by execution or by bill in equity. The creditor attaches that interest, as the property of the debtor, and is not obliged to postpone action until the determination of any trust. He is, therefore, neither delayed, hindered, nor defrauded in any legal sense." (See, also, Eastman *v.* McAlpin, 1 Kelly, 157; Richards *v.* Levin, 16 Mo., 596; Henshaw *v.* Sumner, 23 Pick., 446; Bishop *v.* Halsey, 13 Howard's Prac. Rep., 154; Glen *v.* Grover, 3 Md., 312.)

The authorities cited establish conclusively the validity of the transfer in the present case; and this is equally clear upon principle. From the very power which a man possesses over his own property, it follows that he can dispose of it in any manner he may see fit, which does not contravene the general policy of the law. That policy restricts the power of disposition, so as to prevent the withdrawal of the property from the claims of his creditors. It is no part of such policy to inhibit its application to the payment of one debt rather than another. It would, indeed, be unreasonable to deny, on the one hand, the right to give a preference by voluntary payment or security, and to allow, on the other hand, such preference to be acquired by compulsory process of attachment or execution. A conveyance, giving such preference, is not fraudulent, though the debtor be insolvent, and the creditor be aware, at the time, that it will have the effect of defeating the collection of other debts. To avoid the conveyance, there must be a real design on the part of the debtor to prevent the application of his property, in whole or in part, to the satisfaction of his debts. A creditor violates no rule of law when he takes payment or security for his demand, though others are thereby deprived of all means of obtaining satisfaction of their own equally meritorious claims." (Nicholson *v.* Leavitt, 4 Sand., 252; Covanhovan *v.* Hart, 21 Penn., 495; Warland *v.* Kimberlin, 6 B. Mon., 608; Kinnard *v.* Adams, 11 B. Mon., 102.)

In all the cases cited by the counsel of the appellant, the instruments declared to be void, created a trust in favor of parties other than the assignees. Thus, in Cheever *v.* Hays, (3 Cal., 471,) the assignment was of all the property of the assignors, in trust, for the benefit of *all* their creditors. In Groschen *v.* Page,

(5 Cal. Rep., 138,) the assignment was *in trust*, for the benefit of such of the creditors of the assignors as would consent to an extension of time, or to a substitution of security. So, in the cases cited by the appellant, from New York and Vermont, the instruments created a trust, and the decisions in those cases have no application to a conveyance by the debtor directly to his creditor, either in payment of or as security for his debt.

We are clearly of opinion that the conveyance, by way of mortgage to Stanford Brothers, is not an assignment either within the letter or spirit of the thirty-ninth section of the "Act for the relief of Insolvent Debtors and the protection of Creditors;" and does not create a trust for the use of the mortgagor, prohibited by the Statute of Frauds.

Judgment affirmed.

[Baldwin, J., having been counsel in the Court below, did not sit in the case.]