CASE 76—PETITION EQUITY—OCTOBER 19.

## Jones, &c., vs. Lusk, &c.

APPEAL FROM GARRARD CIRCUIT COURT.

1. The general rule is, that the chancellor will consider every thing done in disobedience of his process as not done at all, or will undo it, if necessary to afford the proper relief. (4 *Mon.*, 569.) But it is necessary for the party to show on the hearing that he had a clear equity, or that he had a valid ground for the injunction when granted. If this be not done, such subsequent acts of the parties will not be disturbed by the chancellor, because it cannot be said that the plaintiff is prejudiced by them. Unless the petition shows upon its face a case for the jurisdiction of the chancellor, the proceeding cannot operate as a *lis pendens*, even from the date of the service of process, so as to affect the property sought to be subjected, or to overreach a subsequent sale or other disposition of it. (6 *B. Mon.*, 130; 4 *Mon., supra.*) And a *lis pendens* created by an amended petition, setting up a different and distinct ground of relief, will not relate back to the commencement of the action so as to affect intervening rights. (1 *Met.*, 654.)

2. The creditors of a partnership have no lien for the payment of their debts upon the partnership effects. Whenever such a lien can be asserted at all, it must be derived from or through one of the partners, and is in such cases but the equity of the partner operating to the payment of partnership debts. (3 *Kent's Com.*, 65; *Story on Part., sec.* 560.) Being derivative merely, this lien fails whenever the partner has done any act by which he has divested himself of the lien the benefit of which is claimed by the creditors. (13 *B. Mon.*, 414.)

3. The partners may by their joint act convert the partnership property into individual property, and although neither partner can, without the consent of the others,

apply the effects of the firm to his individual purposes or to the payment of his individual debts, yet he may do so by the consent of the others. The right of the partners, unitedly, to dispose of the firm property, is the same in all respects as the right which an individual has to control and dispose of his property.

4. The only *insolvency* which will give the chancellor jurisdiction to decree priority of payment in favor of partnership debts is that which is ascertained and established by a judgment, execution, and return of "no property" against one or more of the partners. The mere allegation that the firm, or the partners composing it, are *unable to pay their debts*, whether joint or individual, or both, does not constitute a ground of equitable jurisdiction.

5. Nor is the alleged apprehension of a creditor of the partnership that the partners would use the firm property and effects to the payment of their individual debts, sufficient to give the chancellor jurisdiction.

6. The mere application of partnership property by the firm to the payment of the individual debts of the several partners is not of itself a fraud upon the rights of the firm creditors. That a creditor knew that the firm owed partnership debts when he received partnership property in payment of debts which the partners owed him individually, does not render the transaction fraudulent.

7. A sheriff having given up to the defendant personal property levied on under several executions by himself and a constable, by agreement between them, to be sold by such defendant to avoid the sacrifice which might have attended a sale made by the officers, and to appropriate the proceeds according to the rights which had been acquired under the several levies, had a right to levy the executions in his hands upon the lands of the defendant, and a sale under such levy was valid.

8. A creditor of a partnership alleged that the firm had become involved, and by reason of a disagreement among themselves, the partners were unable to carry on or wind up the partnership to any advantage; that the firm had sold part of the partnership effects, and were paying their individual debts with the proceeds; that owing to the disagreement spoken of they refuse to carry on the partnership agreeable to the original design, and will agree on no plan to settle up and pay off firm debts, but were applying the effects to the payment of their individual debts, to the prejudice and oppression of the plaintiff and other firm creditors, and that the partners are unable to pay their individual and partnership debts, &c. And prayed an injunction to prevent them from selling, or disposing of or consuming, any of the partnership effects, &c. *Held*—That the facts set forth are not sufficient to confer upon the chancellor jurisdiction to lay hold of the partnership effects, and to administer them according to the principles of equity.

M. C. Johnson, for appellants, cited 4 *Mon.*, 569; 6 *B. Mon.*, 130; 13 *B. Mon.*, 413; *Story on Partnership, secs.* 360, 361, 362; 6 *Ves., jr.*, 126, 129; 11 *Ib.*, 5, 6, 7; 4 *Bibb*, 491; 1 *Marsh.*, 292; 4 *J. J. Marsh.*, 237.

A. A. Burton, on same side, cited 13 *B. Mon.*, 414; *Collyer on Partnership, Perkins' edition, secs.* 174, 881, 902, 904; 3 *Kent's Com., 8th ed.*, 65.

J. Burdett, on same side, cited 13 *B. Mon.*, 413; 6 *B. Mon.*, 130; 3 *Kent's Com.*, 65; 2 *Story's Equity*, 1253; *Collyer on Partnership*, 174.

G. W. Dunlap, on same side, cited *Rev. Statutes, art.* 16, *page* 328; 5 *Dana*, 271; 7 *B. Mon.*, 262; 17 *Ves., jr.*, 526; 6 *Ib.*, 126; 13 *B. Mon.*, 411; 6 *B. Mon.*, 128; 7 *Ib.*, 208; 8 *Ib.*, 484; *Civil Code, sec.* 167.

Squire Turner, for appellees, cited 13 *B. Mon.*, 412, *&c.; Carey on Partnership, pp.* 152, 219, 220; *Collyer on Partnership*, 219, 220; 3 *Kent's Com.*, 65; 1 *Story's Equity, page* 625; 2 *Ib.*, *secs.* 1252, 1253; 7 *B. Mon.*, 211; 8 *B. Mon.*, 485–6; *Collyer on Partnership*, 190; *Cross on the Law of Lien, Partners, and Joint Purchasers*, 198, 199; *Civil Code, sec.* 221, *sub-divs.* 7 *and* 8; *Ib.*, *secs.* 299, 328.

S. Lusk, on same side, cited *Collyer on Partnership, page* 524, *sec.* 3, *chap.* 2; 3 *Kent's Com., page* 65; *Story on Partnership, secs.* 97, 264, 329, 261–2–3; 1 *Story's Eq., secs.* 675, 676, 678; *Carey on Partnership, pages,* 219, 220; *Collyer on Partnership, pages,* 280, 284, 337–8, 475–6; *Ib., pages* 478, 190, 201; 8 *B. Mon.*, 485–6; *Civil Code, sec.* 299; 2 *Story's Eq., secs.* 1207, 674, 675, 1211, 1243, 1251, 1252, 1253, 1255, 1257, 395, 399, 405; 7 *J. J. Mar.*, 526; 4 *Dana*, 225; 1 *Marsh.*, 111; 3 *Dana*, 231; 8 *Dana*, 263; 7 *Dana*, 524; *Collyer on Partnership,* 474, 525; *Story on Partnership, secs.* 152, 326–7, 515, 357, 358, 359, 360, 361.

T. N. & D. W. Lindsey, on same side, cited 13 *B. Mon.*, 412; *Civil Code, sec.* 299.

James Harlan on same side.

JUDGE DUVALL delivered the opinion of the court:

If the injunction or attachment which issued on the original petition of Lusk was properly granted, or, in other words, if the facts set forth in that petition presented a case for the jurisdiction of the chancellor, then it is clear that the proceeding operated as a *lis pendens*, and every subsequent act of the parties touching the property in dispute, which may have been done contrary to, or in disobedience of, the injunction, was nugatory, and should have been undone by the chancellor upon the final hearing.

The general rule is, that the chancellor will consider everything done in disobedience of his process as not done at all, or will undo it, if necessary to afford the proper relief. (*Caldwell's heirs vs. White, &c.*, 4 *Mon.*, 569.)

But it is necessary for the party to show, on the hearing, that he had a clear equity, or that he had a valid ground for the injunction when granted. If this be not done, such subsequent acts of the parties will not be disturbed by the chancellor, because it cannot be said that the plaintiff is prejudiced by them. Unless the petition shows upon its face a case for the jurisdiction of the chancellor, the proceeding cannot operate as a *lis pendens*, even from the date of the service of process, so as to affect the property sought to be subjected, or to overreach a subsequent sale or other disposition of it. (*Pearson, &c., vs. Keedy*, 6 *B. Mon.*, 130 ; *Caldwell's heirs vs. White, &c:, supra.*)

This principle has been carried still further. In the case of *Stone & Warren vs. Connelly, &c.*, (1 *Met. Ky. Rep.*, 654,) the plaintiffs sought, by the original petition, to subject the interest of the defendant in a house and lot to the satisfaction of their debt, on the ground that the defendant intended to dispose of her interest for the purpose of defrauding her creditors. The plaintiff obtained an injunction and attachment which was served on the defendant. Soon afterwards, and whilst the suit was pending, she sold and conveyed her interest in the property attached. Subsequently to this sale the plaintiffs, in an amended petition, alleged that they had obtained a judgment for the debt sued for, on which an execution had issued and been returned no property found. It was decided that as there was no evidence to sustain the *fraud* alleged in the *original* petition, the court had no power on that ground to order a sale of the property, and the plaintiffs were entitled to no relief on their original petition; that the purchaser of the interest in contest, having bought pending the litigation under the original petition, held subject to the result of *that* litigation, and subservient to the rights of the plaintiffs arising out of it; that, as the plaintiffs had not shown themselves entitled to a judgment upon the matters then in litigation, the rights of the purchaser could not be affected by a different and distinct ground of relief, subsequently asserted in an amended petition; and that the new *lis pendens* created by the amendment did not relate back to the commencement of the action, so as to affect intervening rights. (*Mitford's Pleadings*, 400; *Dudley vs. Price's adm'r.*, 10 *B. Mon.*, 88;

*Cromwell vs. Clay,* 1 *Dana,* 578; *Kennard, &c., vs. Adams,* 11 *B. Mon.,* 105.)

Whether the facts set forth by the appellee, Lusk, in his original petition, were sufficient to confer upon the chancellor jurisdiction to lay hold of the partnership effects of Kurtz & Merrill, and to administer them according to the principles of equity, becomes the first and most important question to be determined; for the effect and validity of the injunction must depend exclusively upon the sufficiency of the petition.

The facts alleged are, that the firm had become involved; and by reason of a disagreement among themselves the partners were unable to carry on or wind up the partnership to any advantage; that the firm had sold part of the partnership effects, and were paying their individual debts with the proceeds; that owing to the disagreement spoken of, they refuse to carry on the partnership agreeable to the original design, and will agree on no plan to settle up and pay off firm debts, but were applying the effects to the payment of their individual debts, to the prejudice and oppression of the plaintiff and other firm creditors; and that they are unable to pay their individual and partnership debts, &c. And he, therefore, prayed an injunction to prevent the defendants from selling, or disposing of, or consuming, any of the partnership effects, &c.

The principles of law which regulate and determine the rights of partners, and of partnership and individual creditors, with respect to the partnership effects, are well settled. Indeed, the counsel in this case, on both sides, quote from the same authorities, and differ but little as to what those principles are.

The creditors of a partnership have no lien for the payment of their debts upon the partnership effects. Whenever such a lien can be asserted at all, it must be derived from or through one of the partners, and is in such cases but the equity of the partner operating to the payment of the partnership debts. (3 *Kent's Com.,* 65; *Story on Part., sec.* 360.) Being derivative merely, this lien fails whenever the partner has done any act by which he has divested himself of the lien, the benefit of which is claimed by the creditors. (*Wilson vs. Soper,* 13 *B. Mon.,* 414.)

The partners may by their joint act convert the partnership property into individual property; and although neither partner can, without the consent of the others, apply the effects of the firm to his individual purposes, or to the payment of his individual debts, yet he may do so by the consent of the others. In short, the right of the partners, unitedly, to dispose of the firm property, is the same in all respects as the right which an individual has to control and dispose of his property.

These well settled principles have not been controverted in argument, but are fully conceded. It is insisted, however, that when partners become insolvent, or neglect and refuse to carry out the trust, or when they *collude* with others for the purpose of depriving their creditors of their just rights, courts of equity will assume jurisdiction to execute the trust for the benefit of creditors, and all others.

There is no doubt that a fraudulent collusion, either by partners or individuals with others, for the purpose of cheating or of hindering creditors in the collection of their debts, will give the creditors a right to the aid of a court of equity. But no such collusion or fraud is charged in the petition.

The only *insolvency* which will give the chancellor jurisdiction to decree priority of payment in favor of partnership debts, is that which is ascertained and established by a judgment, execution, and return of no property, against one or more of the partners. But the mere allegation that the firm, or the partners composing it, are *unable to pay their debts,* whether joint or individual, or both, has never been held to constitute a ground of equitable jurisdiction. Insolvency in no other form, and to no other extent, is alleged in the petition.

Neither was the alleged apprehension of the plaintiff that these partners would use the firm property and effects to the payment of their individual debts, sufficient to give the chancellor jurisdiction. This conclusion necessarily results from the admitted principle that the firm creditors have no lien upon the firm effects, except as already stated, and that the partners may, by the joint consent of all, make any disposition of the firm property, by sale, transfer, assignment, or otherwise, and apply the proceeds to the payment of their debts, whether they

be debts due by the firm as such, or by the individuals composing it. And such disposition and application of the proceeds will violate no right, and defeat no lien held by partnership creditors, provided it be done *bona fide.* The mere application of partnership property to the payment of the individual debts of the several partners, is not of itself a fraud upon the rights of the firm creditors.

Was the sale by Kurtz & Merrill to Jones *bona fide*, or was it fraudulent? It is not pretended that the sale was intended to secure any benefit to Kurtz & Merrill, or to protect their property against the demands of creditors, or that the debts due to Jones, which formed a part of the consideration of the sale, were not real and *bona fide* debts. The supposed fraud in the sale is said to consist alone in the fact that Jones knew that his vendors were owing partnership debts, and that he had no right, therefore, to receive the partnership property in payment of debts which the partners owed him individually. A sufficient answer to this view is to be found in the principles already stated. The purchase by Jones did not operate to defeat, or to deprive the partnership creditors of any right to, or lien upon the property, for no such right or lien existed at the time he made the purchase, nothing which was adequate to create such lien having up to that time occurred. (See upon this point, *Wilson vs. Soper, supra.*)

It is not alleged in the petition, either in terms or in substance, that there had been a dissolution of the firm, and there is nothing in the answer of the defendants which can be construed as aiding the petition in this respect, or as supplying the want of such averment..

The various objections taken to the sale of a part of the land by the sheriff, under the three executions, are untenable. It is clear, from what has been said, that the injunction which had been obtained by the plaintiff formed no obstacle to the sale of the land under those executions. Nor was his right to sell at all impaired by the previous levy which appears to have been made upon the personal property. That property appears to have been sold by some agreement between Kurtz & Merrill, the sheriff, and a constable, who had also levied some execu-

tions upon the same property. So far as the record shows there was nothing fraudulent, or improper, or illegal in that arrangement. The object was to avoid the sacrifice which might have attended a sale made by the officers, and to appropriate the proceeds according to the rights which had been acquired under the several levies. (4 *Bibb*, 491.) Whether the proceeds of this sale were properly applied or not, is a question not necessary to be decided.

The sheriff having given up the personal property levied on, under the circumstances stated, had a perfect right to levy the executions upon the land of the defendant, and the sale under that levy was valid. (*Morrow vs. Hart*, 1 *Marshall*, 292, *and other cases.*)

It results, then, that Jones, under his purchase at the sheriff's sale, became entitled to 179 acres of the land, subject to the right of the defendants to redeem; and that under his private purchase from Kurtz & Merrill he acquired a valid title to the entire tract; and the application which the parties appear to have made of the consideration paid and agreed to be paid for and upon that purchase, was such as they had a right to make, and was in violation of no prior right or equity which had accrued in favor of any other creditor.

Any interest which either Kurtz or Merrill may be entitled to in the consideration agreed to be paid by Jones, according to the stipulations of the deed and of the writing which was executed contemporaneously with the deed, will be subject, of course, to the debts of Lusk.

The judgment is therefore reversed, and the cause remanded for a judgment in favor of Jones, and further proceedings according to the principles of this opinion.

The questions arising on the appeal of *Lusk vs. Kurtz, &c.*, depend mainly on the principles which have been stated, and need not, therefore, be further considered. Upon that appeal the judgment is affirmed.