J. & S. B. Sachs & Co. *v.* W. B. Shelton, et al.

**Partnership.**

> A partner in business does not cease to be, a partner by merely abandoning the partnership business.

**Fraud of Partner—Right of Creditors.**

> A fraudulent collusion by partners with others to cheat and hinder creditors will give the creditors a right to the aid of a court of equity; and where one partner made a mortgage in fraud of the rights of the other partner and of the firm creditors, this gives the creditors a right to come into court and set up the lien of the defrauded partner and have themselves substituted to whatever lien such partner had.

### APPEAL FROM UNION CIRCUIT COURT.

December 23, 1875.

Opinion by Judge Cofer:

The appellants, J. and S. B. Sachs & Co., sought relief upon two grounds: (1) that the mortgage to Dixon was within the act of 1856, and (2) that the mortgage to Shelton was actually fraudulent.

There is nothing in the record to show that Young was insolvent when he made the mortgage to Dixon; but on the contrary, it appears that when sold under the attachments in these cases, the goods owned by the firm of Young & Green realized more than the indebtedness of the firm and the individual debt of Young to Dixon; and it does not appear that Young then owed any other individual debts. But insolvency and an assignment to a creditor must concur before a trust for the creditors of the assignor can result from the operation of the statute. *Temple, Barker & Co. v. Poyntz, et al.,* 2 Duvall 276. That a debtor at the time of making a mortgage to secure a creditor may have intended, by fraudulent acts thereafter to be done, to render himself insolvent, cannot affect the rights of the secured creditor, unless he had knowledge at the time of accepting the mortgage of the contemplated fraud. We must, therefore, hold that the mortgage to Dixon was not within the statute.

Although there are some facts in the record which cast a shade of suspicion over the transaction between Young and Shelton, we do not think there is enough to overcome the direct and positive evidence that the money was loaned as alleged by Shelton.

The appellants, Sachs & Co., allege in their petition that previous

57

to the dates of the mortgages from Young to Dixon and Shelton, Young had purchased, or otherwise obtained, the entire interest of Gum in the assets of the firm; and in his answer to all the petitions filed after the cases were consolidated, Shelton averred the same fact. Sachs & Co. never amended their petition; and so far as they are concerned, it must be taken to be true that, before the mortgages were made, Green had parted with all the interest he ever had in the firm assets. But as to the other appellants, the record presents a somewhat different question. They all sued Young and Green, and alleged that the goods, the price of which they sued for, were sold and delivered to them as partners, and in their amended petition, which is unanswered, they alleged that Green was a partner, and as such had a lien on the goods to secure the payment of the debts of the firm; and they asked to be substituted to such lien, and to be first paid out of the mortgaged property.

They also alleged "that Young, regardless of the rights of these plaintiffs and the rights of his co-partner, Green, and with the intent to cheat, hinder and defraud them and his co-partner, Green, out of their just rights, made and executed the mortgages to Dixon and Shelton, as set out in their original petitions, upon the partnership assets, to secure said Young's individual indebtedness to said Dixon and Shelton; that said mortgages were made in contravention of the rights and equities of these plaintiffs and his co-partner, Green, and the defendants Dixon and Shelton knew the same." Treating the answer of Shelton as putting the allegation that Green had an interest in the goods in issue, as he does not deny that he was a partner, and that the goods were sold to Young and Green as partners, but seeks to show that Green had ceased to have an interest by selling out to Young, the burden was upon him to prove that such sale had been made. This he has failed to do.

The only evidence in the record which can be supposed to have any bearing upon that question, is in the deposition of Green, in which he says he repeatedly tried to get Young to allow him to take care of the money in order to pay off the indebtedness, but being unable to do so, and seeing no prospect of ever being able to pay the debts in that manner, he quit the business about the 1st of October, 1871, upon no specified conditions. We cannot conclude from this that Green intended to abandon all claim as a partner, and that he thereby surrendered the lien which the law gave for his indemnity against the firm liabilities. He is treated

throughout all the pleadings by all the parties as a partner; and he is distinctly alleged in the amended petition to have been a partner, and as such to have had a lien. Shelton, by alleging that Young had bought out his interest, impliedly admits that he had an interest as a partner, and rested his claim upon the alleged sale of that interest to Young; and he cannot now be heard to say he never was a partner and never had the rights incident to being a partner. That a partner has a lien on the firm assets to indemnify him against the firm liabilities is conceded; and it is also conceded that under certain circumstances the firm creditors may be substituted to the lien of the partners, and may enforce payment through them out of the firm assets; but it is contended that this record does not present a state of case authorizing the court to enforce any lien Green may have in favor of firm creditors, and we are referred to the case of *Jones, et al., v. Lusk, et al.,* 2 Met. 356, as sustaining this position.

While it was said in that case that the only insolvency which will give the chancellor jurisdiction to decree priority of payment in favor of partnership creditors is that which is ascertained and established by a judgment, execution and return of no property against one or more of the partners, it was also said, "There is no doubt that a fraudulent collusion, either by partners or individuals with others, for the purpose of cheating or of hindering creditors in the collection of their debts, will give the creditors a right to the aid of a court of equity."

It is distinctly charged in the amended petition that Young made the mortgages in fraud of the rights of Green and of the firm creditors, and that Dixon and Shelton knew it. This, according to the authority quoted, gave the appellants the rights to come into a court of equity for relief, and to set up the lien of Green, and to have themselves substituted to whatever lien he had.

If Green had paid the debts of these creditors, and had sought reimbursement out of the goods attached in these cases, there can be no doubt but that he would have had a right to it; and as he would have had that right, the creditors may assert it through him. For the reasons given, the judgment is *reversed* as to Roach and Torian, Roach and Underwoods, and Marsh and Lyon, but is *affirmed* as to J. and S. B. Sachs & Co., and the cause is remanded for a judgment directing the payment of the debts of Roach and Torian, Roach and Underwood, and Marsh and Lyon, out of the proceeds of the sale of attached property, if so much remains after

paying the rent due to Cambun, and if there is not enough to pay all, to distribute it according to the priority of their attachments.

*C. Adair, J. A. Spalding, A. J. James, for appellants.*
*A. Duvall, D. H. Hughes, for appellees.*